SANZONE BROKERAGE, INC.           §
                                  §
VS.                               §  CIVIL ACTION NO. 4:08-CV-177-Y
                                  §     [EVEN DOCKET LAW CLERK]
J&M PRODUCE SALES, INC.,          §
ET AL.                            §

## ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Sanzone Brokerage, Incorporated ("Sanzone"), has brought suit against defendant J&M Produce Sales, Incorporated ("J&M Produce"), and three of its officers or directors under the Perishable Agricultural Commodities Act of 1930, as amended ("PACA"), seeking enforcement of a trust imposed under the Act for commodities Sanzone sold to J&M Produce but never received payment. *See* 7 U.S.C. § 499e(c)(3). Contemporaneously with its complaint, Sanzone has filed an application for a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b) seeking to prevent J&M Produce's dissipation of the trust assets. After review, the Court concludes that the application should be GRANTED.

A TRO is an extraordinary remedy that should not be granted unless the movant proves the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) the threat-ened injury to the movant outweighs any harm to the nonmovant that may result from the injunction; and (4) the injunction will not undermine the public interest. *See Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995); *see also Roho, Inc. v. Marquis*, 902 F.2d 356, 358

(5th Cir. 1990); *Canal Auth. of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The Court concludes that Sanzone has met each element.

Sanzone is a company that sells wholesale quantities of perishable agricultural commodities in interstate commerce. On numerous occasions between December 7, 2007, and January 30, 2008, Sanzone sold produce to J&M Produce totaling $113,075.96. Each of Sanzone's invoices contained the following notice:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

J&M Produce accepted the shipments of produce but, despite numerous demands by Sanzone, has failed to pay for the produce.

The United States Court of Appeals for the Fifth Circuit recognizes that "PACA is a tough law." *Golman-Hayden Co., Inc. v. Ideal Sales Inc.,* 217 F.3d 348, 351 (5th Cir. 2000)(internal quotations and citations omitted). The Act regulates the produce industry and seeks to promote fair dealings in transactions of fruits and vegetables. *Id.* at 350.

"Under the Act, when a seller, dealer, or supplier ships produce to a buyer, a statutory trust is created upon acceptance of the commodities." *Id.; see also* 7 U.S.C. §499e. The trust

2

preserves the seller's rights and the seller "obtains a priority interest in the trust assets held by the [buyer]." *Id.* A seller, however, loses the benefit of the trust unless it has served written notice on the buyer of the seller's intent to preserve the trust benefits. The Act provides that a seller "may use ordinary and usual billing or invoice statements to provide notice of the [seller's] intent to preserve the trust." 7 U.S.C. § 499e(c)(4).

The trust commences by operation of law and continues until the buyer makes full payment for the delivered produce. *See* 7 C.F.R. § 46.46(d)(1). The buyer, as trustee, has a fiduciary duty under law to maintain the trust assets at sufficient levels to ensure full payment to sellers, the trust beneficiaries. *See* 7 U.S.C. § 499b(4). Nevertheless, to minimize the burden on buyers, the statute permits the trust "to exist as a nonsegregated floating trust" and permits the commingling of assets. *See Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 156, 159 (11th Cir. 1990). But when trust assets are commingled with other funds, the trust is impressed upon the entire commingled fund for the benefit of the unpaid beneficiaries. *See Sanzone-Palismano v. M. Seaman Enterprises,* 986 F.2d 1010, 1013-14 (6th Cir. 1993). The burden is on the buyer "of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets." *Id.*

The Act provides that the "district courts . . . are vested with jurisdiction specifically to entertain . . . actions by trust

beneficiaries to enforce payment from the trust . . . ."  7 U.S.C.
§ 499e(c)(5).  Included in this grant of authority is the power of
a district court to issue an injunction necessary to preserve the
trust assets.  *See Frio Ice, S.A.*, 918 F.2d at 159 ("preventing
dissipation of the trust is a key purpose of PACA").

First, Sanzone has established that it has a substantial
likelihood of success on the merits.  It provided proof that it is
a licensed seller of produce under the Act; that it sold produce to
J&M Produce; that each of its invoices contained the statutory
required notice to preserve its interest in the trust; that J&M
Produce accepted delivery of the produce; and that J&M Produce has
not paid Sanzone for the produce.

Next, Sanzone has produced evidence that it will suffer
irreparable harm if the TRO is not issued.  Sanzone has produced
evidence that trust assets are being dissipated at this time and
will continue to be dissipated unless J&M Produce is enjoined.
According to the affidavit of Sanzone's owner, he had a conversation
with defendant Jim Odom, believed to be J&M Produce's president, on
March 17, 2008.  He states,

> In this telephone conversation . . ., I specifi-
> cally asked, "Are you able to pay us the money
> you owe us?"  Mr. Odom replied, "I can't do that
> because I don't have it."  I then asked Mr.
> Odom, "Can you send us at least one half of the
> money you owe us?"  Mr. Odom then replied, "I
> can't do that either.  I just don't have it."
> After a few more minutes of discussing how Mr.
> Odom was planning to meet with "some people" on
> Wednesday, March 19, 2008, I resumed my ques-

4

> tions with the following: "Are you still getting
> money in?"  Mr. Odom replied, "Yes, it's coming
> in slowly."  I then asked . . ., "Are you still
> paying other creditors and sending money out?"
> Mr. Odom replied, "Yes, I have to pay some
> folks, but in little bits here and there . . .
> ."  I asked . . ., "Do you have the employees
> paid up current?"  Mr. Odom responded, "I just
> let the last few of them go already . . . ."  I
> again demanded payment of the seriously past due
> invoices and ended the call.

(Pl.'s App. at 5.)  If the trust assets are completely dissipated, Sanzone will have virtually no chance for recovery.  The particular purpose of the Act is to place Sanzone first in line to receive payment for its produce.  By not enjoining J&M Produce from further dissipating the trust, the protections afforded by the Act will be irreparably lost.

Next, the harm to Sanzone outweighs any harm to J&M Produce. The law already provides that the assets in the trust can only be used to pay sellers for the produce sold.  J&M Produce has no authority to use the assets in the trust for any other purpose.  The Fifth Circuit has recognized that PACA is a tough law and Congress has already contemplated that the harm caused by not entrusting the produce or any foods or proceeds derived from it outweighs any harm done to the buyer.  It is against this backdrop that the Court concludes that any harm to Sanzone outweighs any harm to J&M Produce.

And, the injunction will further the public interest.  In the statute, Congress specifically stated:

It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements **are contrary to the public interest.** This section is intended to remedy such a burden on commerce in perishable agricultural commodities **and to protect the public interest.**

7 U.S.C. § 499e(c)(1). Congress has specifically provided that preservation of the trust assets for the benefit of sellers of produce is in the public interest. Congress has specifically provided that protecting the interest of produce sellers and ensuring they are paid for their produce is in the public interest. It is not for this Court to question the judgment of Congress.

Finally, Federal Rule of Civil Procedure 65(b)(1) provides,

A temporary restraining order may be granted without written or oral notice to the adverse party or its attorney if:

(A) specific acts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

As discussed above, Sanzone's complaint, application for a TRO, and

accompanying affidavit from its owner establishes that it will suffer irreparable harm and loss if the TRO is not issued before the adverse party can be heard in opposition. Further, Sanzone's attorney has certified to the Court that notice should not be required because "in this instance . . . notice will afford the Defendants an opportunity to further dissipate trust assets . . . ." (Certificate of Attorney at 1.) Sanzone's affidavit provides evidence that J&M Produce is already engaging in the act of dissipating trust assets and transferring trust assets to third parties not entitled to them. Thus, the Court concludes that providing notice would only serve to provide Defendants "an opportunity to further dissipate the PACA trust assets to . . . non-trust creditors, who can then claim bona fide purchaser status." (*Id.* at 2.)

Therefore, Sanzone's application for a TRO is GRANTED, and it is HEREBY ORDERED:

1.  J&M Produce, its agents, officers, directors, assigns, and any of its banking institutions shall not pay, withdraw, transfer, assign, or sell any and all existing PACA trust assets or otherwise dispose of any corporate assets to any creditors, persons, or entities until further order from this Court, or until Defendants deposit into the registry of the Court the sum of $113,075.96. This provision applies to any accounts, funds, or assets of any kind, whether liquid or not, that are comming-

led with PACA trust assets unless and until Defendants prove that any commingled assets were not acquired with proceeds from the sale of Sanzone's produce or produce-related assets or any assets rightfully belonging to the PACA trust.

2. Further, under the authority granted to this Court through the All Writs Act, 28 U.S.C. § 1651, any banking or financial institution holding funds for J&M Produce in any account in the name of or on behalf of J&M Produce is DIRECTED NOT to pay, transfer, or permit assignment or withdrawal of any of the funds held in such accounts to any person, creditor, or entity, including any of the defendants until further order from the Court.

3. Should Defendants fail to deposit the sum of $113,075.96 in the registry of the Court no later than three government working days from the date of this TRO, Defendants shall account to Sanzone's counsel for all of J&M Produce's accounts receivable, accounts payable, equipment, inventory, and all other assets.

This TRO is binding upon the parties to this action, their agents, officers, directors, servants, employees, banks or financial institutions, attorneys, and all other persons or entities who receive actual notice of this TRO by personal service or otherwise

and who may be in a position to exercise any kind of control over assets belonging in the PACA trust, including any kind of account that contains assets belonging the PACA trust, regardless of whether such account is commingled with any other kind of asset. In this regard, Sanzone shall serve a copy of this TRO on all banking or financial institutions with whom J&M Produce conducts business or has accounts, or may conduct business or that may be holding any assets of J&M Produce in any way. Further, Sanzone must serve a copy of this TRO upon any person or entity it believes is in a position to exercise any kind of control over the PACA trust assets, including any kind of account that contains assets belonging to the PACA trust regardless of whether such account is commingled with any other kind of asset.

This TRO WILL NOT become effective until such person, institution, or entity has been served with this TRO. Sanzone shall serve a copy of this order upon the defendants no later than **4:30 p.m. on Thursday, March 20, 2008.** And Sanzone is further DIRECTED to file notice with the Court of such service on any person, institution, or entity not a party to this action.[1] The notice shall include the name of the person, institution, or entity served and the date of service.

Any person, banking or financial institution, or entity served

---

[1] This requirement does not relieve Sanzone of its obligation to properly effect service of process on Defendants and file proof of such service with this Court.

with this TRO may make an application with this Court, in writing and no later than five government working days from the date of this order, to be relieved from its requirements.

Further, before this TRO will become effective, Sanzone must post a $10,000 bond, and this TRO will expire on April 2, 2008, unless a subsequent order from the Court provides otherwise.

Finally, a preliminary injunction hearing shall be held before this Court on **Friday, March 28, 2008, at 2:00 p.m.** in the 2nd Floor Courtroom of the United States Courthouse, 501 W. 10th St., Fort Worth, Texas. Separate lists of exhibits and witnesses, except those offered for impeachment, shall be filed with the clerk of the Court and served on opposing counsel **no later than 4:00 p.m. on Tuesday, March 25.**

It is further ORDERED that all direct testimony must be presented by sworn affidavit and that each affiant must be present for cross and redirect examination. The sworn affidavits shall be filed with the clerk of the Court and served on opposing counsel **no later than 4:00 p.m. on Tuesday, March 25.** Depositions or portions thereof taken by and agreed by the parties to be substituted for live testimony and or/ affidavits must be submitted to the Court (but not filed) **no later than 4:00 p.m. on Tuesday, March 25**, as well.

Further, no later than **4:00 p.m. on Wednesday, March 26**, each party shall provide the Court with two three-ring notebooks, each to

contain one set of copies of every exhibit that the party plans to offer at the preliminary-injunction hearing. Each exhibit must bear the case number of this action, the exhibit number, and the identity of the offering party. There must also be a table of contents setting forth the number and a brief description of each exhibit.

The parties are hereby allotted one and one half hours per side to present testimony at the preliminary-injunction hearing. The Court's allocation of time is, of course, subject to the require-ments of due process. If a party wishes to complain that the Court's limitation of its time violates its right to due process, the party shall be prepared, upon request, to demonstrate to the Court, by reasonably specific proffer, the testimony and/or exhibits that it has been prevented from presenting by reason of said limitation. Upon the Court's finding that a party has used its allotted time wisely and nevertheless has been or will be denied due

process by reason of the enforcement of the time limitations, additional time will be granted to that party sufficient to meet any requirements of due process.[2]

SIGNED March 19, 2008, at 3:15 p.m.

_Terry R. Means_

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[2] Sanzone's application for the TRO included a request for the Court to enjoin the personal bank accounts of the individual named defendants. Sanzone contends that as officers or directors of J&M Produce, they may be held personally liable for the dissipation of the PACA trust assets. The Fifth Circuit has recognized that officers, directors, and shareholders of a corporation may be held liable for the dissipation of PACA trust assets if they had a role in causing the corporate trustee to commit a breach of the trust. *See Goldman-Hayden Co., Inc.,* 217 F.2d at 351. But this liability is secondary, and Sanzone would have to prove that the three individual defendants were officers or directors of J&M Produce who had control or dominion over the trust assets and who had some role in causing J&M Produce to commit a breach of the trust. *Id.* Sanzone has not presented any evidence of this and, therefore, is not entitled to enjoin the individual defendants personal bank accounts or assets. Any accounts in their names as corporate officers and in their capacity as corporate officers are subject to this TRO since such assets are the property of J&M Produce. Further, Sanzone's cause of action against the individual defendants would be for breach of fiduciary duty or causing J&M Produce to breach its fiduciary duty. Such a cause of action has available money damages as a remedy and thus Sanzone would not suffer irreparable harm if the individual defendants were not enjoined.